## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ANDREW GLORIA MARTINEZ,** | § | **CASE NO. 06-34385** |
| **DEBTOR** | § | |
| | § | |
| | § | |
| **ANDREW GLORIA MARTINEZ,** | § | |
| **PLAINTIFF** | § | |
| | § | |
| **V.** | § | |
| | § | **ADVERSARY NO. 06-3669** |
| **BENEFICIAL TEXAS, INC.** | § | |
| **DEFENDANT** | § | |

## MEMORANDUM OPINION ON DEFENDANT'S APPLICATION FOR ORDER OF REFERRAL TO ARBITRATION
[Docket No. 9]

### I. INTRODUCTION

As a general rule, there is a presumption in federal courts in favor of enforcing valid arbitration agreements. However, a motion seeking to arbitrate a matter raised in the course of a bankruptcy case brings the Federal Arbitration Act into direct conflict with the Bankruptcy Code, and the Bankruptcy Court may have discretion to deny enforcement of a valid arbitration agreement.

Beneficial Texas, Inc. (the Defendant) seeks, through its Application for Order of Referral to Arbitration, to have this Court order the parties to arbitrate the Debtor's four causes of actions pursuant to an Arbitration Rider. The Arbitration Rider was attached to a home equity loan agreement signed by the Debtor's grandmother. The Debtor took an interest in the real property under his grandmother's will subject to the home equity loan, but was not a signatory to the loan or

the Arbitration Rider.  The Debtor filed this adversary proceeding based on the federal Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 et seq., common law breach of contract and Art. XVI, § 50 of the Texas Constitution.  The Court finds that the Debtor's causes of action can only be construed as suits based on the loan agreement and thus, even though the debtor did not sign the loan, the Debtor is bound to the arbitration agreement under Texas law.  Next, the Court determines that the Debtor's TILA claims do not derive from the Bankruptcy Code and should be abated pending arbitration.  Finally, the Court finds that the Debtor's objections to claim are core proceedings which derive from the Bankruptcy Code, and this Court will exercise its discretion to deny enforcement of the otherwise valid arbitration provision as to those objections to claim.

This Memorandum Opinion will solely analyze the threshold issue of this Court's authority to refuse enforcement of a provision requiring arbitration.  The Court will not address the merits of the Debtor's Complaint, and nothing in this Memorandum Opinion should be construed as the Court making any judgment on the merits of the Debtor's Complaint.

Set forth below are the Court's written findings of fact and conclusions of law.  The Court reserves its right to make additional findings of facts and conclusions of law as it deems appropriate or as may be requested by any of the parties.

## II.  FINDINGS OF FACT

1.      On or about May 3, 2000, Josephine Martinez, the Debtor's now deceased grandmother, executed a Loan Repayment and Security Agreement (the Agreement) with Beneficial Texas, Inc. (the Defendant). [Case No. 06-34385, Proof of Claim #5.] The Agreement incorporated

by reference a separate document titled "Arbitration Rider," which was executed by Ms. Martinez on the same date. [Docket No. 19, p. 7.[1]]

2.      On or about December 31, 2001, Ms. Martinez passed away. [Docket No. 16, ¶ 3.] The Debtor took a one-third interest in the entire estate of Ms. Martinez pursuant to the terms of her will. [Docket No. 10, Exhibit A.] The home that was the subject of the Agreement was part of her estate.

3.      On September 1, 2006, the Debtor filed a voluntary Chapter 13 petition. [Case No. 06-34385, Docket No. 1.]

4.      On October 4, 2006, the Defendant filed its Proof of Claim for $49,246.86 arising out of the Agreement. [Case No. 06-34385, Proof of Claim #5.] Aside from the principal, interest and arrears on the original loan to Ms. Martinez, the Proof of Claim also included attorney's fees and costs in the amount of $4,293.84. [Id.]

5.      On November 22, 2006, the Debtor initiated this adversary proceeding by filing his Complaint and Objection to Claim of Beneficial Texas, Inc. [Docket No. 1.] The Complaint contains two causes of action that seek affirmative relief against the Defendant; whereas, the Objection to Claim seeks to reduce the amount claimed in the Proof of Claim.[2]

6.      The Complaint states four causes of action: two claims under the Truth in Lending Act (TILA), a common law breach of contract claim, and a violation of Art. XVI, § 50 of the

---

[1] Unless otherwise indicated, all docket citations refer to the docket in Adversary Case No. 06-3669.

[2] Pursuant to Bankruptcy Rule 3007 a an objection to claim may be joined with an adversary proceeding under Bankruptcy Rule 7001, and the objection to claim becomes an adversary proceeding itself.

Texas Constitution. [*Id.*, pp. 4-5.][3]  The relief sought by the Debtor includes monetary

damages for statutory violations of TILA, plus an award of attorney's fees, elimination or

reduction of the fees and costs included in the Proof of Claim, and declaratory relief

invalidating the lien unless it complies with the Texas Constitution. [*Id.*, p. 6.]

7.       On December 18, 2006, the Defendant filed its Motion to Dismiss Complaint and Objection

to Claim (the Motion to Dismiss). [Docket No. 8.]  The Defendant sought dismissal based

on the Debtor's lack of standing. [*Id.*]  On January 31, 2007, the Court denied the Motion

to Dismiss because it determined that the Debtor had standing to bring this adversary

proceeding. [Docket No. 19.]

8.       On December 18, 2006, the Defendant also filed its Application for Order of Referral to

Arbitration (the Application for Arbitration) [Docket No. 9], which is the subject of this

Memorandum Opinion.

9.       On January 2, 2007, the Debtor filed his Response in Opposition to Defendant's Application

for Order of Referral to Arbitration. [Docket No. 11.]  In his response, the Debtor argues

that: (a) since he did not sign the Agreement, he should not be bound to the arbitration

provisions; and; (b) assuming the arbitration provision is binding upon him, the Fifth Circuit

permits bankruptcy courts to exercise discretion to deny enforcement of arbitration clauses

when the proceeding derives from the Bankruptcy Code and arbitration would conflict with

the purpose of the Bankruptcy Code. [*Id.*]

---

[3] Despite the joinder of the Debtor's Complaint with the Objections to Claim, it is necessary for this Court, as described in greater detail below, to separately analyze each cause of action. Therefore, this Memorandum Opinion will refer to the Debtor's two TILA causes of action as part of the "Complaint" and the breach of contract and constitutional violations as the "Objections to Claims," even though the Debtor filed both in a single pleading.

10.     On January 25, 2007, this Court heard oral arguments on the Application for Order of Referral to Arbitration.

11.     On January 31, 2007, the Defendant filed its Memorandum of Law In Support of Compelling Arbitration and attached a copy of the Arbitration Rider. [Docket No. 18.]  The Defendant's position is that (a) the Arbitration Rider is enforceable as to the Debtor because his "allegations seek to redress material provisions of the documents comprising the [Agreement]." [*Id.*, ¶ 5.]; and (b) the Debtor should be estopped from asserting claims which are dependent upon the Agreement while simultaneously arguing that certain portions of the Agreement, i.e., the Arbitration Rider, do not apply to him.  [*Id.*, ¶ 11.]

12.     On February 6, 2007, the Defendant filed its Original Answer to Complaint and Objection to Claim of Beneficial Texas, Inc. [Docket No. 21.]

13.     On February 19, 2007, the Debtor filed his Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration. [Docket No. 22.]

### III. CONCLUSIONS OF LAW

**A.      Jurisdiction and Venue**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(B), (C), (K), and (O).  Venue is proper pursuant to 28 U.S.C. § 1409.

**B.      The Debtor is bound by the Arbitration Rider, and the claims fall within the scope of the Arbitration Rider**

Since the Debtor was not a signatory to the Agreement, the first issue that this Court must address is whether the Debtor is bound by the Arbitration Rider.  If he is bound, the Court must then determine whether the claims in this adversary proceeding fall within the scope of the Arbitration

Rider. *See Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996) ("This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement"(citations omitted)). This Court finds that the Debtor is bound by the terms of the Arbitration Rider, and also that the Debtor's claims fall within the scope of the Arbitration Rider.

Because arbitration agreements are a type of contractual agreement between two parties, it should go without saying that this Court will not force a party into arbitration unless *both* parties have actually agreed to arbitrate a claim. *See EEOC v. Waffle House*, 534 U.S. 279, 294 (2002). "The federal policy favoring arbitration does not extend to a determination of who is bound because, as stated by the Supreme Court, the purpose of the Federal Arbitration Act is 'to make arbitration agreements as enforceable as other contracts, but not more so.'" *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069,1074 n. 5 (5th Cir. 2002) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 380 U.S. 395, 404 n. 12 (1967)). The determination of who is bound to an arbitration agreement is purely a matter of state contract law. *Washington Mutual Fin. Group LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (citing *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Here, the Debtor argues that he was not the party who signed the Arbitration Rider, it was his grandmother; and therefore under contractual principles, he should not to be required to submit his claims to arbitration. [Docket No. 11, ¶ 6.] While this is a correct statement of the general rule, Texas law has developed two exceptions under which a non-signatory is bound by the terms of an arbitration agreement. One exception is if a non-signatory to a contract brings a lawsuit on the basis of the contract, he has subjected himself to the terms of that contract and will be bound by it.

*Fleetwood*, 280 F.3d at 1075 (citing *In re First Merit Bank*, 52 S.W. 3d 749, 755-56 (Tex. 2001)).[4]

For this exception to apply, the claims being asserted must "require reliance on the terms of the

written agreement containing the arbitration provision." *Id.* (quoting *Southwest Tex. Pathology

Assocs., LLP v. Roosth*, 27 S.W.3d 204, 208 (Tex. App. San Antonio 2000)).  The court in *First

Merit Bank* found that claims for breach of contract, revocation of acceptance, and breach of

warranty were all types of claims that required reliance on the terms of the written agreement. *Id.*

As previously stated, the Debtor's causes of action against the Defendant are for: (1)

Violation of TILA, (2) Breach of Contract, and (3) Violation of Art. XVI, § 50 of the Texas

Constitution.  Under the TILA claims, the Debtor alleges a violation of disclosure provisions and

defective notice. As damages for these violations, the Debtor seeks statutory recovery authorized by

TILA and the recovery of attorney's fees.  This relief sought by the Debtor requires reliance upon

the alleged misrepresentation made by the Defendant in the disclosure statement, which was part of

the Agreement.  Therefore, the TILA claims are a suit brought on the basis of the Agreement.  Next,

the breach of contract claim is inherently a claim based upon the underlying Agreement. *In re First

Merit Bank,* 52 S.W. 3d at 755-56.  Finally, the violation of Art. XVI, § 50(e) of the Texas

Constitution is also a suit based on the Agreement.  That claim alleges that the Defendant's lien,

arising from the Agreement, was for an amount beyond the constitutional limits provided in Art.

XVI, § 50(e).  This claim arises solely out of the terms of the Agreement.  Therefore, since all of the

Debtor's claims appear to be based upon, and require reliance upon, the Agreement, this Court will

---

[4] The other exception, which does not apply to this adversary proceeding, is if the non-signatory is an intended third-party beneficiary of the contract. *Fleetwood*, 280 F.3d at 1074.  Here, there are no facts which indicate that the home equity loan was incurred for the benefit of the Debtor.

not allow the Debtor to escape the provisions of the Arbitration Rider, and accordingly finds that its terms are binding upon the Debtor.

Having determined that the Debtor is bound by the Arbitration Rider, the Court next turns to the question of whether the claims brought by the Debtor fall within the scope of the Arbitration Rider. The Arbitration Rider includes a dozen provisions but, in pertinent part, provides that it is applicable to "any legal proceeding, any action, dispute, claim or controversy of any kind whether contract or tort, statutory or common law, legal or equitable . . . arising out of, pertaining to or in connection with the [Agreement]." [Docket No. 18, Exhibit No. 1.] The Court has already made the express finding that the claims being brought in this adversary proceeding arise out of the Agreement; thus, the claims are also within the scope of the Arbitration Rider.

The Defendant argues that if this Court, as it did above, finds that an arbitration agreement is binding on a party and that party's claim is within the scope of that agreement, it is *mandatory* for the Court to order the parties to arbitration. [Docket No. 18, ¶ 4.] In a non-bankruptcy setting, this conclusion would be correct as a matter of law. However, because this is an adversary proceeding before a bankruptcy court, this Court may exercise its discretion to deny enforcement of an otherwise valid arbitration agreement.

**C.     Under the *National Gypsum* test, this Court has the discretion to refuse to stay an adversary proceeding pending arbitration.**

The Fifth Circuit has applied a two-prong test for determining when a bankruptcy court may decline to enforce an otherwise valid arbitration provision. Such discretion exists only if: (1) the proceeding derives solely from the provisions of the Bankruptcy Code; and (2) arbitration of the proceeding would conflict with the purposes of the Bankruptcy Code. *Gandy v. Gandy (In re*

*Gandy*), 299 F.3d 489, 495 (5th Cir. 2002); *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp.* (*In re Nat'l Gypsum*), 118 F.3d 1056, 1067 (5th Cir. 1997) (setting forth the "*National Gypsum* test").  Both parts of the test are necessary, and the failure of the first is fatal:

> Under [the *National Gypsum*] test, if the court determines that a proceeding does not derive exclusively from the Code, the court has no choice but to abstain and allow the parties to arbitrate the matter.  If the court finds the proceeding does derive exclusively from the Code, the court has the discretion to deny a request for arbitration if the court further determines that arbitration would conflict with the purposes of the Code.

*In re Mirant Corp.*, 316 B.R. 234, 238 (Bankr. N.D. Tex. 2004).

1.     **The first prong of the *National Gypsum* test—whether the nature of the proceedings derive solely from the provisions of the Bankruptcy Code.**

Under the first prong of the *National Gypsum* test, the Court must examine the underlying nature of the proceedings.  *In re Nat'l Gypsum*, 118 F.3d at 1067 ("We believe that nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, i.e., whether the proceeding derives exclusively from the provisions of the Bankruptcy Code.") Furthermore, the Court must consider each cause of action separately and distinguish those causes which derive from the Bankruptcy Code from those which do not.  *See Ernst & Young, LLP v. Pritchard* (*In re Daisytek, Inc.*), 323 B.R. 180, 188 (N.D. Tex. 2005) (holding that because the bankruptcy court did not distinguish between the disparate types of proceedings in its decision to trump the arbitration clauses, the case must be remanded to the bankruptcy court for a determination of the extent to which the proceedings derive exclusively from Bankruptcy Code provisions). Therefore, this Court will separately consider whether the Debtor's claims in the Complaint and those raised in the Objections to Claim are derived exclusively from the Bankruptcy Code. Two recent cases are of assistance in this regard.

9

In *Daisytek*, the District Court noted that the Trustee brought two categories of proceedings before the Bankruptcy Court: (1) a state-law malpractice claim and (2) an action to avoid preferential and fraudulent transfers under 11 U.S.C. §§ 547 and 548. *In re Daisytek, Inc.*, 323 B.R. at 187–88. As for the Trustee's malpractice claim, the court held that it was not a proceeding derived solely from the Bankruptcy Code, but rather was a state law claim that could be brought in a forum other than the bankruptcy court. *Id.* at 187. Thus, the Bankruptcy Court had no discretion to refuse enforcement of a provision requiring arbitration and did not reach the second prong of the *National Gypsum* test. *Id.* at 188. However, the Trustee's other claims, the preference claim and fraudulent transfers under 11 U.S.C. §§ 547 and 548, derived exclusively from the Bankruptcy Code, and the court could refuse to enforce an otherwise applicable arbitration agreement. *Id.*

In *Mirant*, the debtor objected to a creditor's proof of claim, whereupon the creditor moved for relief from stay to liquidate its claim pursuant to an arbitration provision in its contract. *In re Mirant Corp.*, 316 B.R. 234, 237 (Bankr. N.D. Tex. 2004). In applying the *National Gypsum* test, the *Mirant* court held that, even though state law would control whether the claim was allowed, the actual process of allowing claims derived exclusively from the Bankruptcy Code, and therefore, the first prong of the *National Gypsum* test was met. *Id.* at 238-39 ("While the substance of a dispute may be governed by law peculiar to bankruptcy, the court does not perceive the first part of the *Nat'l Gypsum* test to *require* that the *substantive* issues in dispute be derived from the Code. Many issues in bankruptcy cases arise under state law but *must* be subject to the bankruptcy court's jurisdiction for it to do its job.").

The court in *Mirant* also pointed to *In re Wood* where the Fifth Circuit described the claim objection process as a classic example of core bankruptcy jurisdiction:

A claim against the estate is instituted by filing a proof of claim as provided by the bankruptcy rules. The filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. Understood in this sense, a claim filed against the estate is a core proceeding because it *could arise only in the context of bankruptcy*. Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the *nature of the proceeding* following the filing of a proof of claim.

*Id. At 239 (quoting Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987) (internal citations omitted) (emphasis added).

The court in *Mirant* held that the *National Gypsum* test is satisfied any time that the claims allowance process, or for that matter any core proceeding, is involved because it becomes the "proceeding" that is the focus of the *National Gypsum* analysis, superceding the actual underlying dispute.[5]

### a.    The Debtor's causes of action in the Complaint do not derive solely from the Bankruptcy Code.

As noted above, the Debtor filed a pleading titled "Complaint and Objection to Claim." In this single pleading, the Debtor states causes of action for violation of TILA, for breach of contract due to filing the proof of claim for amounts not allowed under the Agreement, and finally for violation of the homestead section of the Texas Constitution. [Docket No. 1.] The Debtor's two TILA causes of action are not objections to claim.[6] Under these causes of action, the Debtor seeks affirmative relief against the Defendant in the form of statutory damages for violations of TILA and

---

[5] In *Daisytek*, the court rejected the argument that a Rule 2004 examination, which was the context in which the arbitration provision arose in that case, was this same kind of "proceeding" as the court in *Mirant* had found the claims process to be. *Daisytek* instead found that it was merely a discovery device, whereas the objection to claim in *Mirant* was a core proceeding. *Daisytek*, 323 B.R. at 187.

[6] In fact, pursuant to Bankruptcy Rule 3007, the TILA claims could not be transformed into objections to claim; rather, the inverse is true—the objections to claim would become part of the adversary proceeding.

11

attorney's fees; such affirmative relief is not part of an objection to claim. In fact, the Debtor seems to acknowledge that these two causes of action are not objections to claim because the final two causes of actions are titled "Breach of Contract/Objection to Claim" and "Violation of Texas Constitution, Art. XVI, Sec. 50 / Objection to Claim"; whereas, the Debtor omitted the phrase "objection to claim" in reference to the TILA causes of action.

Since the causes of action in the Complaint are distinct from the Objections to Claim, the rule in *Mirant*—that all objections to claims derive solely from the Code and satisfy the first prong—does not apply to them. Instead, this Court is obligated to examine the underlying nature of the proceedings involved. The TILA claims are federal statutory claims which could have been brought independent of the Debtor's bankruptcy case and do not directly invoke the claims allowance process. Although they arise out of the Agreement which serves as the basis of the Defendant's Proof of Claim, the Debtor seeks an affirmative monetary recovery against the Defendant in these TILA claims that is unrelated to the Proof of Claim. Accordingly, this Court finds that the underlying nature of the Debtor's TILA causes of action is a federal statutory right which does not derive solely from the Bankruptcy Code. Thus, the TILA claims do not satisfy the first prong of the *National Gypsum* test and the Court does not need to consider the second prong as it relates to these claims. The Court must enforce the terms of the Arbitration Rider. A separate Order will be entered on the docket simultaneously with this Memorandum Opinion abating the Debtor's TILA claims pending arbitration.

     **b.**     **The Debtor's Objections to Claim derive solely from the Bankruptcy Code.**

Unlike the TILA claims discussed above, the Debtor's two remaining causes of action are substantively objections to the Defendant's Proof of Claim. In the third cause of action, the Debtor asserts that the Agreement does not allow for the recovery of attorney's fees and certain other fees which were included in the Defendant's Proof of Claim. Had that proof of claim not been filed, the Debtor would obviously have no independent cause of action against the Defendant. The Debtor's fourth cause of action seeks to reduce the amount of the Defendant's lien because it violates a provision of the Texas Constitution. Not only is this cause of action properly deemed an objection to claim, which according to *Mirant* would be conclusively derived from the Code; it would also be a core proceeding under 28 U.S.C. §157(K) ("determinations of the validity, extent, or priority of liens"). Thus, even though the underlying claim derives from the Texas Constitution, the form in which it appears before this Court is that of a core proceeding, both as an objection to claim and a determination of the Defendant's lien.

Since the third and fourth causes of action are properly Objections to Claim, this Court finds that, according to *Mirant*, the underlying nature of their proceeding must necessarily derive exclusively from the Bankruptcy Code because it involves the claims allowance process. Thus, the Objections to Claim pass the first prong of the *National Gypsum* test and the Court next considers whether arbitrating these Objections to Claim would conflict with the purposes of the Bankruptcy Code.

2.    **The second prong of the *National Gypsum* test—whether arbitration would conflict with the purposes of the Bankruptcy Code.**

Under the second prong of the *National Gypsum* test, the Court determines "whether arbitration of the proceeding would conflict with the purposes of the Code." *In re Nat'l Gypsum*, 118 F.3d at 1067.   The Court may exercise its discretion to deny the Defendant's request if arbitration would conflict with the purposes of the Bankruptcy Code.  The Fifth Circuit in *National Gypsum* identified three factors[7] for the bankruptcy court to consider: (1) the goal of centralized resolution of purely bankruptcy issues; (2) the need to protect creditors and reorganizing debtors from piecemeal litigation; and (3) the undisputed power of a bankruptcy court to enforce its own orders. *In re Nat'l Gypsum*, 118 F.3d at 1069. "[The] bankruptcy court retains significant discretion to assess whether arbitration would be consistent with the purpose of the Code." *In re Nat'l Gypsum*, 118 F.3d at 1069. In *Mirant*, the court denied the creditor's request for relief from the stay to arbitrate its claims because arbitration conflicted with the goal of the Bankruptcy Code to provide a central forum for resolution of claims against debtors. *See In re Mirant Corp.*, 316 B.R. at 239–40 ("This procedure for liquidation of claims against a bankruptcy estate and their allowance and disallowance is at the very heart of the bankruptcy court's function and purpose.").

Here, arbitrating the Debtor's Objections to Claim would contravene the Bankruptcy Code's purpose of providing a central forum for resolution of claims against the Debtor.  Other claims by different creditors have been filed in this case, and the Debtor is entitled to adjudicate all of these claims in a single, central forum.  Additionally, sending the Debtor's Objections to Claim to

---

[7]*National Gypsum* enumerates a non-exclusive list of three purposes of the Bankruptcy Code, and this Court does not read *National Gypsum* as restricting the Court's consideration to only those three purposes. *See In re Mirant Corp.*, 316 B.R. at 241.

arbitration would result in piecemeal litigation of bankruptcy issues. Hence, to avoid conflict with the underlying purposes of the Bankruptcy Code identified by the Fifth Circuit, this Court chooses to exercise its discretion to deny enforcement of the Arbitration Rider as to the Objections to Claim.

## V.  CONCLUSION

The Debtor is bound, under Texas law, to the terms of the Arbitration Rider because he has brought the adversary proceeding based on the Agreement and is therefore estopped from denying its applicability to this suit.  The Debtor's claims are within the scope of the Arbitration Rider. Further, the Court finds that it has no discretion to deny enforcement of the Arbitration Rider as to the Debtor's TILA claims in the Complaint, and this Court will enforce the terms of the Arbitration Rider by abating the TILA claims.  Finally, this Court has the discretion to deny enforcement of the Arbitration Rider as to the Debtor's two Objections to Claim, and finds that the Objections to Claim should not be arbitrated.  An Order consistent with this Memorandum Opinion will be simultaneously entered on the docket.


Signed on this 3rd day of April, 2007

Jeff Bohm
U.S. Bankruptcy Judge