IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| ANDREW GLORIA MARTINEZ, DEBTOR | § § § § | CASE NO. 06-34385 |
| | § § | |
| ANDREW GLORIA MARTINEZ, PLAINTIFF | § § § | |
| V. | § § | ADVERSARY NO. 06-3669 |
| BENEFICIAL TEXAS, INC. DEFENDANT | § § § | |

## AMENDED MEMORANDUM OPINION ON DEFENDANT'S APPLICATION FOR ORDER OF REFERRAL TO ARBITRATION[1]
[Docket No. 9]

### I. INTRODUCTION

As a general rule, there is a presumption in federal courts in favor of enforcing valid arbitration agreements. However, a motion seeking to arbitrate a matter raised in the course of a bankruptcy case brings the Federal Arbitration Act into direct conflict with the Bankruptcy Code, and the Bankruptcy Court may have discretion to deny enforcement of a valid arbitration agreement.

Beneficial Texas, Inc. (the Defendant) seeks, through its Application for Order of Referral to Arbitration, to have this Court order the parties to arbitrate the Debtor's four causes of actions pursuant to an Arbitration Rider. The Arbitration Rider was attached to a home equity loan

---

[1] This Amended Memorandum Opinion replaces this Court's previous Memorandum Opinion of April 3, 2007. [Adv. Case No. 06-3669, Docket No. 25.] The Court issues this Amended Opinion in the wake of granting the Debtor's Motion to Reconsider Order Granting in Part and Denying in Part Defendant's Application for Order of Referral to Arbitration. [Adv. Case No. 06-3669, Docket No. 32.]

agreement signed by the Debtor's grandmother. The Debtor took an interest in the real property under his grandmother's will subject to the home equity loan, but was not a signatory to the loan or the Arbitration Rider. The Debtor filed this adversary proceeding based on the federal Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 et seq., common law breach of contract and Art. XVI, § 50 of the Texas Constitution. The Court finds that the Debtor's causes of action can only be construed as suits based on the loan agreement and thus, even though the debtor did not sign the loan, the Debtor is bound to the arbitration agreement under Texas law. Next, the Court determines that the Debtor's objections to claim are core proceedings which derive from the Bankruptcy Code, and this Court will exercise its discretion to deny enforcement of the otherwise valid arbitration provision.

This Memorandum Opinion will solely analyze the threshold issue of this Court's authority to refuse enforcement of a provision requiring arbitration. The Court will not address the merits of the Debtor's Complaint, and nothing in this Memorandum Opinion should be construed as the Court making any judgment on the merits of the Debtor's Complaint.

Set forth below are the Court's written findings of fact and conclusions of law. The Court reserves its right to make additional findings of facts and conclusions of law as it deems appropriate or as may be requested by any of the parties.

## II. FINDINGS OF FACT

1. On or about May 3, 2000, Josephine Martinez, the Debtor's now deceased grandmother, executed a Loan Repayment and Security Agreement (the Agreement) with Beneficial Texas, Inc. (the Defendant). [Case No. 06-34385, Proof of Claim #5.] The Agreement incorporated

by reference a separate document titled "Arbitration Rider," which was executed by Ms. Martinez on the same date. [Docket No. 19, p. 7.[2]]

2. On or about December 31, 2001, Ms. Martinez passed away. [Docket No. 16, ¶ 3.] The Debtor took a one-third interest in the entire estate of Ms. Martinez pursuant to the terms of her will. [Docket No. 10, Exhibit A.] The home that was the subject of the Agreement was part of her estate.

3. On September 1, 2006, the Debtor filed a voluntary Chapter 13 petition. [Case No. 06-34385, Docket No. 1.]

4. On October 4, 2006, the Defendant filed its Proof of Claim for $49,246.86 arising out of the Agreement. [Case No. 06-34385, Proof of Claim #5.] Aside from the principal, interest and arrears on the original loan to Ms. Martinez, the Proof of Claim also included attorney's fees and costs in the amount of $4,293.84. [*Id.*]

5. On November 22, 2006, the Debtor initiated this adversary proceeding by filing his Complaint and Objection to Claim of Beneficial Texas, Inc. [Docket No. 1.][3]

6. The Complaint states four causes of action: two claims under the Truth in Lending Act (TILA), a common law breach of contract claim, and a violation of Art. XVI, § 50 of the Texas Constitution. [*Id.*, pp. 4-5.] The relief sought by the Debtor under TILA includes recoupment or setoff against the Defendant's Proof of Claim and an award of attorney's fees. The other causes of action seek elimination or reduction of the fees and costs included in the

---

[2] Unless otherwise indicated, all docket citations refer to the docket in Adversary Case No. 06-3669.

[3] Pursuant to Bankruptcy Rule 3007 a an objection to claim may be joined with an adversary proceeding under Bankruptcy Rule 7001, and the objection to claim becomes an adversary proceeding itself.

3

       Proof of Claim and declaratory relief invalidating the Defendant's lien unless it complies with the Texas Constitution. [*Id.*, p. 6.]

7. On December 18, 2006, the Defendant filed its Motion to Dismiss Complaint and Objection to Claim (the Motion to Dismiss). [Docket No. 8.] The Defendant sought dismissal based on the Debtor's lack of standing. [*Id.*] On January 31, 2007, the Court denied the Motion to Dismiss because it determined that the Debtor had standing to bring this adversary proceeding. [Docket No. 19.]

8. On December 18, 2006, the Defendant also filed its Application for Order of Referral to Arbitration (the Application for Arbitration) [Docket No. 9], which is the subject of this Memorandum Opinion.

9. On January 2, 2007, the Debtor filed his Response in Opposition to Defendant's Application for Order of Referral to Arbitration. [Docket No. 11.] In his response, the Debtor argues that: (a) since he did not sign the Agreement, he should not be bound to the arbitration provisions; and; (b) assuming the arbitration provision is binding upon him, the Fifth Circuit permits bankruptcy courts to exercise discretion to deny enforcement of arbitration clauses when the proceeding derives from the Bankruptcy Code and arbitration would conflict with the purpose of the Bankruptcy Code. [*Id.*]

10. On January 25, 2007, this Court heard oral arguments on the Application for Order of Referral to Arbitration.

11. On January 31, 2007, the Defendant filed its Memorandum of Law In Support of Compelling Arbitration and attached a copy of the Arbitration Rider. [Docket No. 18.] The Defendant's position is that (a) the Arbitration Rider is enforceable as to the Debtor because his

4

"allegations seek to redress material provisions of the documents comprising the [Agreement]." [*Id.*, ¶ 5.]; and (b) the Debtor should be estopped from asserting claims which are dependent upon the Agreement while simultaneously arguing that certain portions of the Agreement, i.e., the Arbitration Rider, do not apply to him. [*Id.*, ¶ 11.]

12. On February 6, 2007, the Defendant filed its Original Answer to Complaint and Objection to Claim of Beneficial Texas, Inc. [Docket No. 21.]

13. On February 19, 2007, the Debtor filed his Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration. [Docket No. 22.]

14. On April 3, 2007, the Court entered its Order Granting in Part and Denying in Part Defendant's Application for Order of Referral to Arbitration. [Docket No. 26.]

15. On April 13, 2007, the Debtor filed his Motion to Reconsider Order Granting in Part and Denying in Part Defendant's Application for Order of Referral to Arbitration (the Motion to Reconsider). [Docket No. 32.]

16. On April 17, 2007, the Defendant filed its Response to the Motion to Reconsider. [Docket No. 33.]

### III. CONCLUSIONS OF LAW

**A.    Jurisdiction and Venue**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(B), (C), (K), and (O). Venue is proper pursuant to 28 U.S.C. § 1409.

B.  **The Debtor is bound by the Arbitration Rider, and the claims fall within the scope of the Arbitration Rider**

Since the Debtor was not a signatory to the Agreement, the first issue that this Court must address is whether the Debtor is bound by the Arbitration Rider. If he is bound, the Court must then determine whether the claims in this adversary proceeding fall within the scope of the Arbitration Rider. *See Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996) ("This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement"(citations omitted)). This Court finds that the Debtor is bound by the terms of the Arbitration Rider, and also that the Debtor's claims fall within the scope of the Arbitration Rider.

Because arbitration agreements are a type of contractual agreement between two parties, it should go without saying that this Court will not force a party into arbitration unless *both* parties have actually agreed to arbitrate a claim. *See EEOC v. Waffle House*, 534 U.S. 279, 294 (2002). "The federal policy favoring arbitration does not extend to a determination of who is bound because, as stated by the Supreme Court, the purpose of the Federal Arbitration Act is 'to make arbitration agreements as enforceable as other contracts, but not more so.'" *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1074 n. 5 (5th Cir. 2002) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 380 U.S. 395, 404 n. 12 (1967)). The determination of who is bound to an arbitration agreement is purely a matter of state contract law. *Washington Mutual Fin. Group LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (citing *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Here, the Debtor argues that he was not the party who signed the Arbitration Rider, it was his grandmother; and therefore under contractual principles, he should not to be required to submit his claims to arbitration. [Docket No. 11, ¶ 6.] While this is a correct statement of the general rule, Texas law has developed two exceptions under which a non-signatory is bound by the terms of an arbitration agreement. One exception is if a non-signatory to a contract brings a lawsuit on the basis of the contract, he has subjected himself to the terms of that contract and will be bound by it. *Fleetwood*, 280 F.3d at 1075 (citing *In re First Merit Bank*, 52 S.W. 3d 749, 755-56 (Tex. 2001)).[4] For this exception to apply, the claims being asserted must "require reliance on the terms of the written agreement containing the arbitration provision." *Id.* (quoting *Southwest Tex. Pathology Assocs., LLP v. Roosth*, 27 S.W.3d 204, 208 (Tex. App. San Antonio 2000)). The court in *First Merit Bank* found that claims for breach of contract, revocation of acceptance, and breach of warranty were all types of claims that required reliance on the terms of the written agreement. *Id.*

As previously stated, the Debtor's causes of action against the Defendant are for: (1) Violation of TILA, (2) Breach of Contract, and (3) Violation of Art. XVI, § 50 of the Texas Constitution. Under the TILA claims, the Debtor alleges a violation of disclosure provisions and defective notice. The Debtor seeks to use the statutory violations of TILA as an affirmative defense requiring recoupment or setoff of the Proof of Claim. This relief sought by the Debtor requires reliance upon the alleged misrepresentation made by the Defendant in the disclosure statement, which was part of the Agreement. Therefore, the TILA claims are a suit brought on the basis of the Agreement. Next, the breach of contract claim is inherently a claim based upon the underlying

---

[4] The other exception, which does not apply to this adversary proceeding, is if the non-signatory is an intended third-party beneficiary of the contract. *Fleetwood*, 280 F.3d at 1074. Here, there are no facts which indicate that the home equity loan was incurred for the benefit of the Debtor.

7

Agreement. *In re First Merit Bank,* 52 S.W. 3d at 755-56. Finally, the violation of Art. XVI, § 50(e) of the Texas Constitution is also a suit based on the Agreement. That claim alleges that the Defendant's lien, arising from the Agreement, was for an amount beyond the constitutional limits provided in Art. XVI, § 50(e). This claim arises solely out of the terms of the Agreement. Therefore, since all of the Debtor's claims appear to be based upon, and require reliance upon, the Agreement, this Court will not allow the Debtor to escape the provisions of the Arbitration Rider, and accordingly finds that its terms are binding upon the Debtor.

Having determined that the Debtor is bound by the Arbitration Rider, the Court next turns to the question of whether the claims brought by the Debtor fall within the scope of the Arbitration Rider. The Arbitration Rider includes a dozen provisions but, in pertinent part, provides that it is applicable to "any legal proceeding, any action, dispute, claim or controversy of any kind whether contract or tort, statutory or common law, legal or equitable . . . arising out of, pertaining to or in connection with the [Agreement]." [Docket No. 18, Exhibit No. 1.] The Court has already made the express finding that the claims being brought in this adversary proceeding arise out of the Agreement; thus, the claims are also within the scope of the Arbitration Rider.

The Defendant argues that if this Court, as it did above, finds that an arbitration agreement is binding on a party and that party's claim is within the scope of that agreement, it is *mandatory* for the Court to order the parties to arbitration. [Docket No. 18, ¶ 4.] In a non-bankruptcy setting, this conclusion would be correct as a matter of law. However, because this is an adversary proceeding before a bankruptcy court, this Court may exercise its discretion to deny enforcement of an otherwise valid arbitration agreement.

8

C.  **Under the *National Gypsum* test, this Court has the discretion to refuse to stay an adversary proceeding pending arbitration.**

The Fifth Circuit has applied a two-prong test for determining when a bankruptcy court may decline to enforce an otherwise valid arbitration provision. Such discretion exists only if: (1) the proceeding derives solely from the provisions of the Bankruptcy Code; and (2) arbitration of the proceeding would conflict with the purposes of the Bankruptcy Code. *Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 495 (5th Cir. 2002); *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum)*, 118 F.3d 1056, 1067 (5th Cir. 1997) (setting forth the "*National Gypsum* test"). Both parts of the test are necessary, and the failure of the first is fatal:

> Under [the *National Gypsum*] test, if the court determines that a proceeding does not derive exclusively from the Code, the court has no choice but to abstain and allow the parties to arbitrate the matter. If the court finds the proceeding does derive exclusively from the Code, the court has the discretion to deny a request for arbitration if the court further determines that arbitration would conflict with the purposes of the Code.

*In re Mirant Corp.*, 316 B.R. 234, 238 (Bankr. N.D. Tex. 2004).

1.  **The first prong of the *National Gypsum* test—whether the nature of the proceedings derive solely from the provisions of the Bankruptcy Code.**

Under the first prong of the *National Gypsum* test, the Court must examine the underlying nature of the proceedings. *In re Nat'l Gypsum*, 118 F.3d at 1067 ("We believe that nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, i.e., whether the proceeding derives exclusively from the provisions of the Bankruptcy Code.") Furthermore, the Court must consider each cause of action separately and distinguish those causes which derive from the Bankruptcy Code from those which do not. *See Ernst & Young, LLP v. Pritchard (In re Daisytek, Inc.)*, 323 B.R. 180, 188 (N.D. Tex. 2005) (holding that because the

9

bankruptcy court did not distinguish between the disparate types of proceedings in its decision to trump the arbitration clauses, the case must be remanded to the bankruptcy court for a determination of the extent to which the proceedings derive exclusively from Bankruptcy Code provisions).

In *Mirant*, the debtor objected to a creditor's proof of claim, whereupon the creditor moved for relief from stay to liquidate its claim pursuant to an arbitration provision in its contract. *In re Mirant Corp.*, 316 B.R. 234, 237 (Bankr. N.D. Tex. 2004). In applying the *National Gypsum* test, the *Mirant* court held that, even though state law would control whether the claim was allowed, the actual process of allowing claims derived exclusively from the Bankruptcy Code, and therefore, the first prong of the *National Gypsum* test was met. *Id.* at 238-39 ("While the substance of a dispute may be governed by law peculiar to bankruptcy, the court does not perceive the first part of the *Nat'l Gypsum* test to *require* that the *substantive* issues in dispute be derived from the Code. Many issues in bankruptcy cases arise under state law but *must* be subject to the bankruptcy court's jurisdiction for it to do its job.").

The court in *Mirant* also pointed to *In re Wood* where the Fifth Circuit described the claim objection process as a classic example of core bankruptcy jurisdiction:

> A claim against the estate is instituted by filing a proof of claim as provided by the bankruptcy rules. The filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. Understood in this sense, a claim filed against the estate is a core proceeding because it *could arise only in the context of bankruptcy*. Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the *nature of the proceeding* following the filing of a proof of claim.

*Id. At 239 (quoting Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987) (internal citations omitted) (emphasis added).

The court in *Mirant* held that the *National Gypsum* test is satisfied any time that the claims allowance process, or for that matter any core proceeding, is involved because it becomes the "proceeding" that is the focus of the *National Gypsum* analysis, superceding the actual underlying dispute.

Assuming that the Debtor's four causes of action are, in substance, objections to claim, the holding in *Mirant*—that all objections to claims derive solely from the Code—would require this Court to conclude that the first prong of the *National Gypsum* test is satisfied. In its original Memorandum Opinion [Docket No. 25], the Court found that the Debtor's TILA causes of action were not objections to claim because they sought affirmative relief through statutory damages and attorney's fees. In his Motion for Reconsideration [Docket No. 32], the Debtor pointed out that the Complaint sought "TILA statutory damages by way of recoupment against Defendant's Proof of Claim, and attorney fees." [Docket No. 1.] The Debtor argues that these TILA causes of action should be considered statutory affirmative defenses because the recovery sought is limited to recoupment against the Defendant's claim. Additionally, the Debtor points out that he would be timed barred from bringing a suit for affirmative relief against the Defendant but for TILA's exception to its one-year statute of limitations for violations that are being used as a defense by recoupment or setoff. 15 U.S.C. § 1640(e).

After reconsideration, the Court agrees and finds that the Debtor's TILA causes of action are defensive in nature and should be deemed objections to claim rather than part of a complaint in an adversary proceeding seeking affirmative relief.[5] Under *Mirant*, all objections to claim inherently

---

[5] However, the Court will not go so far as to conclude that the request for attorney's fees is part of a defense. The portions of TILA cited by the Debtor do not include the right to recover attorney's fees as part of a defensive claim. Rather, this Court will require the Debtor to amend his Complaint and Objection to Claim to remove all demands for

11

derive from the Bankruptcy Code, and this Court has found that the Debtor's two TILA causes of action are objections to the Defendant's Proof of Claim. Accordingly, the Court must conclude that the first prong of the National Gypsum test has been satisfied as to the first two causes of action.

The Debtor's two remaining causes of action are also substantively objections to the Defendant's Proof of Claim. In the third cause of action, the Debtor asserts that the Agreement does not allow for the recovery of attorney's fees and certain other fees which were included in the Defendant's Proof of Claim. Had that proof of claim not been filed, the Debtor would obviously have no independent cause of action against the Defendant. The Debtor's fourth cause of action seeks to reduce the amount of the Defendant's lien because it violates a provision of the Texas Constitution. Not only is this cause of action properly deemed an objection to claim, which according to *Mirant* would be conclusively derived from the Code; it would also be a core proceeding under 28 U.S.C. §157(b)(2)(K) ("determinations of the validity, extent, or priority of liens"). Thus, even though the underlying claim derives from the Texas Constitution, the form in which it appears before this Court is that of a core proceeding, both as an objection to claim and a determination of the Defendant's lien.

Since the third and fourth causes of action are properly objections to claim, this Court finds that, according to *Mirant*, the underlying nature of their proceeding must necessarily derive exclusively from the Bankruptcy Code because it involves the claims allowance process. Thus, all four causes of action pass the first prong of the *National Gypsum* test and the Court next considers whether arbitrating these objections would conflict with the purposes of the Bankruptcy Code.

---

attorney's fees for violations of TILA.

2.  **The second prong of the *National Gypsum* test—whether arbitration would conflict with the purposes of the Bankruptcy Code.**

Under the second prong of the *National Gypsum* test, the Court determines "whether arbitration of the proceeding would conflict with the purposes of the Code." *In re Nat'l Gypsum*, 118 F.3d at 1067. The Court may exercise its discretion to deny the Defendant's request if arbitration would conflict with the purposes of the Bankruptcy Code. The Fifth Circuit in *National Gypsum* identified three factors[6] for the bankruptcy court to consider: (1) the goal of centralized resolution of purely bankruptcy issues; (2) the need to protect creditors and reorganizing debtors from piecemeal litigation; and (3) the undisputed power of a bankruptcy court to enforce its own orders. *In re Nat'l Gypsum*, 118 F.3d at 1069. "[The] bankruptcy court retains significant discretion to assess whether arbitration would be consistent with the purpose of the Code." *In re Nat'l Gypsum*, 118 F.3d at 1069. In *Mirant*, the court denied the creditor's request for relief from the stay to arbitrate its claims because arbitration conflicted with the goal of the Bankruptcy Code to provide a central forum for resolution of claims against debtors. *See In re Mirant Corp.*, 316 B.R. at 239–40 ("This procedure for liquidation of claims against a bankruptcy estate and their allowance and disallowance is at the very heart of the bankruptcy court's function and purpose.").

Here, arbitrating the Debtor's objections to claim would contravene the Bankruptcy Code's purpose of providing a central forum for resolution of claims against the Debtor. Other claims by different creditors have been filed in this case, and the Debtor is entitled to adjudicate all of these claims in a single, central forum. Additionally, sending the Debtor's objections to claim to

---

[6]*National Gypsum* enumerates a non-exclusive list of three purposes of the Bankruptcy Code, and this Court does not read *National Gypsum* as restricting the Court's consideration to only those three purposes. *See In re Mirant Corp.*, 316 B.R. at 241.

arbitration would result in piecemeal litigation of bankruptcy issues. Hence, to avoid conflict with the underlying purposes of the Bankruptcy Code identified by the Fifth Circuit, this Court chooses to exercise its discretion to deny enforcement of the Arbitration Rider as to the objections to claim.

## IV. CONCLUSION

The Debtor is bound, under Texas law, to the terms of the Arbitration Rider because he has brought the adversary proceeding based on the Agreement and is therefore estopped from denying its applicability to this suit. The Debtor's causes of action, which are in effect objections to the Defendant's Proof of Claim, are within the scope of the Arbitration Rider. Notwithstanding the validity of the Arbitration Rider, this Court has the discretion to deny enforcement of the Arbitration Rider as to these objections to claim, and finds that these objections should not be arbitrated, but rather should be adjudicated by this Court. An Order consistent with this Memorandum Opinion will be simultaneously entered on the docket.

Signed on this 19th day of April, 2007

Jeff Bohm
U.S. Bankruptcy Judge